FILED IN THE U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

OCT 2 8 2025

SEAN F. McAVOY, CLERK
SPOKANE, WASHINGTON

S. Peter Serrano
United States Attorney
Eastern District of Washington
Alison L. Gregoire
Assistant United States Attorney
Annika Tangvald
Special Assistant United States Attorney
Post Office Box 1494
Spokane, WA 99210-1494
Telephone: (509) 353-2767

UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF WASHINGTON

UNITED STATES OF AMERICA,

Plaintiff,

v.

DAREN LYLE MARTIN,

Defendant.

Case No. 2:24-CR-00076-RLP-1

Plea Agreement

Plaintiff, United States of America, by and through S. Peter Serrano, United States Attorney for the Eastern District of Washington, Annika Tangvald, Special Assistant United States Attorney, and Alison L. Gregoire, Assistant United States Attorney for the Eastern District of Washington, and Defendant, DAREN LYLE MARTIN ("Defendant"), both individually and by and through Defendant's counsel, David Miller, agree to the following Plea Agreement:

1.      Waiver of Indictment, Guilty Pleas and Maximum Statutory Penalties:

Defendant agrees to waive indictment by a Grand Jury and enter a plea of guilty to the Information charging him with Possession with Intent to Distribute 50 Grams or More of Methamphetamine, in violation of 21 U.S.C. §§ 841(a)(1), (b)(1)(B)(viii),

PLEA AGREEMENT - 1

(Count 1); and Felon in Possession of a Firearm and Ammunition, in violation of 18 U.S.C. § 922(g)(1), 924(a)(8) (Count 2).

Defendant understands that the following potential penalties apply to Count 1:

    a. a term of imprisonment of not less than 5 years no more than 40 years;

    b. a term of supervised release of not less than 4 years and up to a lifetime;

    c. a fine of up to $5,000,000; and

    d. a $100 special penalty assessment.

Defendant understands the following potential penalties apply to Count 2:

    a. a term of imprisonment of not more than 15 years;

    b. a term of supervised release of not more than 3 years;

    c. a fine of up to $250,000; and

    d. a $100 special penalty assessment.

Defendant further understands that the Court can Order that any sentence imposed, as to each count, run consecutive.

2.   <u>Supervised Release</u>

Defendant understands that if Defendant violates any condition of Defendant's supervised release, the Court may revoke Defendant's term of supervised release, and require Defendant to serve in prison all or part of the term of supervised release authorized by statute for the offense that resulted in such term of supervised release without credit for time previously served on post-release supervision, up to the following terms:

    a. 5 years in prison if the offense that resulted in the term of Supervised Release is a class A felony,

    b. 3 years in prison if the offense that resulted in the term of Supervised Release is a class B felony, and/or

PLEA AGREEMENT - 2

c.   2 years in prison if the offense that resulted in the term of Supervised Release is a class C felony.

Accordingly, Defendant understands that if Defendant commits one or more violations of supervised release, Defendant could serve a total term of incarceration greater than the maximum sentence authorized by statute for Defendant's offense or offenses of conviction.

3.   Denial of Federal Benefits:

Defendant understands that by entering the plea of guilty to Count 1, Defendant is no longer eligible for assistance under any state program funded under part A of Title IV of the Social Security Act (concerning Temporary Assistance for Needy Families) or benefits under the food stamp program or any state program carried out under the Food Stamp Act. 21 U.S.C. § 862a. Defendant also understands that the Court may deny Defendant's eligibility for any grant, contract, loan, professional license, or commercial license provided by an agency of the United States or by appropriated funds of the United States. 21 U.S.C. § 862.

4.   Potential Immigration Consequences of Guilty Plea

If Defendant is not a citizen of the United States, Defendant understands the following:

a.   pleading guilty in this case may have immigration consequences;

b.   a broad range of federal crimes may result in Defendant's removal from the United States, including the offense to which Defendant is pleading guilty;

c.   removal from the United States and other immigration consequences are the subject of separate proceedings; and

d.   no one, including Defendant's attorney or the Court, can predict with absolute certainty the effect of a federal conviction on Defendant's immigration status.

PLEA AGREEMENT - 3

Defendant affirms that Defendant is knowingly, intelligently, and voluntarily pleading guilty as set forth in this Plea Agreement, regardless of any immigration consequences that Defendant's guilty plea may entail.

5. The Court is Not a Party to the Plea Agreement:

The Court is not a party to this Plea Agreement and may accept or reject it. Defendant acknowledges that no promises of any type have been made to Defendant with respect to the sentence the Court will impose in this matter.

Defendant understands the following:

    a. sentencing is a matter solely within the discretion of the Court;

    b. the Court is under no obligation to accept any recommendations made by the United States or Defendant;

    c. the Court will obtain an independent report and sentencing recommendation from the United States Probation Office;

    d. the Court may exercise its discretion to impose any sentence it deems appropriate, up to the statutory maximum penalties;

    e. the Court is required to consider the applicable range set forth in the United States Sentencing Guidelines, but may depart upward or downward under certain circumstances; and

    f. the Court may reject recommendations made by the United States or Defendant, and that will not be a basis for Defendant to withdraw from this Plea Agreement or Defendant's guilty plea.

6. Waiver of Constitutional Rights:

Defendant understands that by entering this plea of guilty Defendant is knowingly and voluntarily waiving certain constitutional rights, including:

    a. The right to a jury trial;

    b. The right to see, hear and question the witnesses;

    c. The right to remain silent at trial;

    d. The right to testify at trial; and

PLEA AGREEMENT - 4

e.    The right to compel witnesses to testify.

While Defendant is waiving certain constitutional rights, Defendant understands Defendant retains the right to be assisted through the sentencing and any direct appeal of the conviction and sentence by an attorney, who will be appointed at no cost if Defendant cannot afford to hire an attorney.

Defendant understands and agrees that any defense motions currently pending before the Court are mooted by this Plea Agreement, and Defendant expressly waives Defendant's right to bring any additional pretrial motions.

7.    Elements of the Offense:

a.    *Count 1*:

The United States and Defendant agree that to convict Defendant of Count 1, the United States would have to prove beyond a reasonable doubt the following elements:

> *First,* on or about March 12, 2024, in the Eastern District of Washington, Defendant knowingly possessed a mixture or substance containing a detectable amount of methamphetamine;
>
> *Second,* Defendant possessed it with the intent to deliver it to another person; and
>
> *Third,* Defendant possessed with intent to distribute more than 50 grams of a mixture or substance containing methamphetamine.

b.    *Count 2*:

The United States and Defendant agree that to convict Defendant of Count 2, the United States would have to prove the following beyond a reasonable doubt.

> *First,* on or about March 12, 2024, within the Eastern District of Washington, Defendant knowingly possessed a firearm;
>
> *Second,* the firearm had been shipped from one state to another or between a foreign nation and the United States;
>
> *Third,* at the time Defendant possessed the firearm, Defendant had been

PLEA AGREEMENT - 5

convicted of a crime punishable by imprisonment for a term exceeding one year; and

*Fourth,* at the time Defendant possessed the firearm, Defendant knew he had been convicted of a crime punishable by imprisonment for a term exceeding one year.

8.    Statement of Facts:

The United States and Defendant stipulate and agree to the following: the facts set forth below are accurate; the United States could prove these facts beyond a reasonable doubt at trial; and these facts constitute an adequate factual basis for Defendant's guilty plea.

The United States and Defendant agree that this statement of facts does not preclude either party from presenting and arguing, for sentencing purposes, additional facts that are relevant to the Sentencing Guidelines computation or sentencing, unless otherwise prohibited in this Plea Agreement.  The parties further agree and stipulate that this factual basis is simply a summary to support the plea, it does not contain all facts which could be proven by the United States.

This case evolved from an incident on March 12, 2024, in which the Stevens County Sheriff's Office was assisting the U.S. Marshals Service in locating a fugitive identified as David Cato in Newport, Washington. Sources had reported that Cato was frequenting the residence of Aubrey Hunter located at 440 Independence Road in Newport. At least two marked law enforcement vehicles arrived at Hunter's residence at approximately 5:00 pm looking for the fugitive.

As the officers arrived, they saw a man (later identified as Defendant Daren Lyle Martin) standing in a parking area between a gold-colored Chrysler and the residence. Martin turned towards the Chrysler vehicle "at a swift pace" then stopped and turned toward the residence "as if he had changed his mind." As the officers exited their vehicles, at least one of them recognized Martin, who had an "outlaw" tattoo on his neck.  Martin confirmed his identity and said that he was just there to let

PLEA AGREEMENT - 6

the dog out. Martin said that Hunter was not there and that he did not know Cato. During the officers' contact with Martin, he appeared "extremely nervous, glancing in all directions and keeping his distance" from the officers. Martin denied driving to the residence in the gold Chrysler and claimed to have walked there. However, mud and water were still dripping from inside of the vehicle's fenders and the windshield was clear of water droplets in the path of the windshield wipers. The car was otherwise covered in rain drops. Although the vehicle appeared to have just been driven, Martin claimed that no one else was present at the property.

One of the officers observed in plain view through looking in the window of the Chrysler, what appeared to be a .45 1911 model handgun in the driver's seat. The officer who recognized Martin knew that he was prohibited from possessing firearms based on a prior felony conviction. The officers also saw a boot print in the mud exiting the vehicle that matched the boots that Martin was wearing. The officers detained Martin based upon these suspicions. During a pat-down search, they found a large baseball size bag of white crystal-like substance in his right pocket of his jacket. They also found a zip lock bag of additional white crystal-like substance in his left pocket. The substance field tested positive for methamphetamine. Martin also had a key fob in his pocket that locked and unlocked the Chrysler automobile.

Martin was arrested and the officers impounded the gold Chrysler to apply for a search warrant. On March 14, 2024, the county officers obtained a state search warrant to search the vehicle for firearms. The officers served the search warrant the same day. The firearm was seized and identified as a Remington Arms Company, model 1911 R1, .45 caliber pistol, bearing serial number RHN74805A. ATF SA Mike Northcutt reported that the firearm was manufactured in New York. The firearm was also loaded with 11 rounds of ammunition head stamped "PMC 45 AUTO," which was confirmed, by Agent Northcutt to be manufactured by Poongsan Corporation in South Korea.

PLEA AGREEMENT - 7

The methamphetamine, which had been located in Martin's pocket, was subsequently tested by the DEA laboratory and determined to be 127.9 net grams of 78% pure methamphetamine, resulting in a total of 99.7 grams of actual (pure) methamphetamine and therefore more than 50 grams of a mixture or substance containing methamphetamine.

9.    The United States Agreements:

a.    *Dismissal*:

The United States Attorney's Office for the Eastern District of Washington agrees that at the time of sentencing, the United States will move to dismiss the Superseding Indictment unless Defendant breaches the Plea Agreement.

b.    *Not to File Additional Charges*:

The United States Attorney's Office for the Eastern District of Washington agrees not to bring additional charges against Defendant based on information in its possession at the time of this Plea Agreement that arise from conduct that is either charged in the Superseding Indictment or identified in discovery produced in this case, unless Defendant breaches this Plea Agreement before sentencing.

10.    United States Sentencing Guideline Calculations:

Defendant understands and acknowledges that the United States Sentencing Guidelines (hereinafter "USSG" or "Guidelines") apply and that the Court will determine Defendant's advisory range at the time of sentencing, pursuant to the Guidelines. The United States and Defendant have no agreement as to Guidelines calculations. The United States believes the following to be applicable, but Defendant maintains his right to argue the entirety of the Guideline calculation:

a.    *Count 1*

1.    Base Offense Level and Relevant Conduct:

The United States contends Defendant possessed with the intent to distribute at least 50 grams but less than 150 grams of pure methamphetamine that this amount

PLEA AGREEMENT - 8

properly accounts for his relevant conduct. Therefore, the United States intends to argue his offense level should be 30. *See* USSG §2D1.1(a)(5), (c)(5).

2. <u>Special Offense Characteristics</u>:

The United States contends Defendant possessed a firearm in connection with the offense; therefore, two additional points should be added to his offense level pursuant to USSG §2D1.1(b)(1).

Defendant agrees that he is not eligible for application of the Safety Valve pursuant to 18 U.S.C. § 3553(f) and USSG §5C1.2.

b. *Count 2*

1. <u>Base Offense Level</u>:

The United States contends Defendant's based offense level is 14. *See* USSG § 2K2.1(a)(6).

2. <u>Special Offense Characteristics</u>:

The United States contends 4-levels are properly added as the firearm was possessed connected to another offense. *See* USSG §2K2.1(b)(6)(B).

c. *Role Adjustments*:

The United States contends no role adjustment should be applied. *See* USSG §§3B1.1; 3B1.2.

d. *Grouping*

The parties agree the offenses are grouped, therefore the group with the highest offense level will likely apply. However, the parties are free to amend their position after the completion of the Pre-Sentence Investigation Report.

e. *Acceptance of Responsibility*:

The United States will recommend that Defendant receive a three-level downward adjustment for acceptance of responsibility, pursuant to USSG § 3E1.1(a), (b), if Defendant does the following:

i. accepts this Plea Agreement;

PLEA AGREEMENT - 9

ii.    enters a guilty plea at the first Court hearing that takes place after the United States offers this Plea Agreement;

iii.    demonstrates recognition and affirmative acceptance of Defendant's personal responsibility for Defendant's criminal conduct;

iv.    provides complete and accurate information during the sentencing process; and

v.    does not commit any obstructive conduct.

The United States and Defendant agree that at its option and on written notice to Defendant, the United States may elect not to recommend a reduction for acceptance of responsibility if, prior to the imposition of sentence, Defendant is charged with, or convicted of, any criminal offense, or if Defendant tests positive for any controlled substance.

    *g.*    *Agreements Regarding Representations to the Court:*

The United States has a duty of candor to the tribunal. If the United States and Defendant do not agree on the appropriate length of incarceration, the appropriate length or applicable terms of supervised release, and/or the correct guidelines calculations, variances, departures, and/or enhancements, the United States reserves the right to respond to any and all arguments made by Defendant, on any bases the United States deems appropriate, at all stages of this criminal case.

Defendant may make any arguments it deems appropriate, at all stages of this criminal case.

Regarding all briefing, submissions, and hearings in this criminal case, the United States and Defendant agree to the following provisions:

i.    The United States and Defendant may each respond to any questions from the Court or United States Probation Office;

PLEA AGREEMENT - 10

ii. The United States and Defendant may each supplement the facts under consideration by the Court by providing information the United States or Defendant deems relevant;

iii. The United States and Defendant may each present and argue any additional facts that the United States or Defendant believe are relevant to the Sentencing Guidelines computation or sentencing;

iv. The United States and Defendant may each present and argue information that may already be known to the Court, including information contained in the Presentence Investigation Report;

v. The United States and Defendant may each respond to any arguments presented by the other;

vi. In order to support the United States' sentencing recommendation as set forth herein, the United States may oppose and argue against any defense argument or any recommendation for any sentence lower than the sentence recommended by the United States on any basis, including arguments for a lower offense level, a lower criminal history calculation, the application or non-application of any sentencing enhancement or departure, and/or any variance from the Guidelines range as calculated by the Court;

vii. In order to support the defense sentencing recommendation as set forth herein, Defendant may oppose and argue against any argument by the United States, or any recommendation for any sentence higher than the sentence recommended by the defense on any basis, including arguments for a higher offense level, a higher criminal history calculation, the

PLEA AGREEMENT - 11

application or non-application of any sentencing enhancement or departure, and/or any variance from the Guidelines range as calculated by the Court;

viii. The United States may make any sentencing arguments the United States deems appropriate so long as they are consistent with this Plea Agreement, including arguments arising from Defendant's uncharged conduct, conduct set forth in charges that will be dismissed pursuant to this Plea Agreement, and Defendant's relevant conduct; and

ix. Defendant may make any sentencing arguments consistent with this Plea Agreement Defendant deems appropriate.

e. *No Other Agreements*:

The United States and Defendant have no other agreements regarding the Guidelines or the application of any Guidelines enhancements, departures, or variances. Defendant understands and acknowledges that the United States is free to make any sentencing arguments it sees fit, including arguments arising from Defendant's uncharged conduct, conduct set forth in charges that will be dismissed pursuant to this Agreement, and Defendant's relevant conduct.

f. *Criminal History*:

The United States and Defendant have made no agreement and make no representations as to Defendant's Criminal History Category, which shall be determined by the Court at sentencing after the Presentence Investigation Report is completed.

11. Length of Incarceration:

The United States agrees to recommend a total term of incarceration of 108 months. Defendant may recommend any legal sentence.

PLEA AGREEMENT - 12

12. Judicial Forfeiture:

Defendant agrees to voluntarily forfeit and relinquish all right, title and interest he has in the following listed firearm and ammunition to the United States:

- a Remington Arms Company, model 1911 R1, .45 caliber pistol, bearing serial number RHN74805A;

- 11 rounds of ammunition head stamped "PMC 45 AUTO."

Defendant acknowledges that the firearm and ammunition listed above are subject to forfeiture to the United States as property used or intended to be used in any manner or part to commit or facilitate or as property involved in the offenses to which Defendant is pleading guilty.

Defendant agrees to take all steps as requested by the United States to pass clear title to the assets to the United States and to testify truthfully in any forfeiture proceeding. Defendant agrees to hold all law enforcement agents and the United States, its agents, and its employees harmless from any claims whatsoever arising in connection with the seizure, abandonment, or forfeiture of any asset covered by this agreement.

Defendant further agrees to waive all constitutional and statutory challenges in any manner (including direct appeal, habeas corpus, or any other means) to any forfeiture carried out in accordance with this Plea Agreement on any grounds, including that the forfeiture constitutes an excessive fine or punishment. Defendant knowingly and voluntarily waives his right to a jury trial on the forfeiture of the asset(s). Defendant waives oral pronouncement of forfeiture at the time of sentencing, and any defects that may pertain to the forfeiture.

Defendant waives further notice of any federal, state or local proceedings involving the forfeiture of the seized assets the Defendant is agreeing to forfeit in this Plea Agreement.

13. Supervised Release:

The United States and Defendant each agree to recommend 4 years of

PLEA AGREEMENT - 13

supervised release. Defendant agrees that the Court's decision regarding the conditions of Defendant's Supervised Release is final and non-appealable; that is, even if Defendant is unhappy with the conditions of Supervised Release ordered by the Court, that will not be a basis for Defendant to withdraw Defendant's guilty plea, withdraw from this Plea Agreement, or appeal Defendant's conviction, sentence, or any term of Supervised Release.

The United States and Defendant agree to recommend that in addition to the standard conditions of supervised release imposed in all cases in this District, the Court should also impose the following conditions:

    a. that Defendant participate and complete such drug testing and drug treatment programs as the Probation Officer directs, but not to exceed six non-treatment drug tests per month during the imposed term of supervised release;

    b. that Defendant's person, residence, office, vehicle, and belongings are subject to search at the direction of the Probation Officer;

    c. that Defendant have no contact with any identified witnesses or co-defendants in this cause number.

14.   Criminal Fine:

The United States and Defendant do not agree as to the imposition of any criminal fine and will argue that at the time of sentencing. Defendant acknowledges that the Court's decision regarding a fine is final and non-appealable; that is, even if Defendant is unhappy with a fine ordered by the Court, that will not be a basis for Defendant to withdraw Defendant's guilty plea, withdraw from this Plea Agreement, or appeal Defendant's conviction, sentence, or fine.

15.   Mandatory Special Penalty Assessment:

Defendant agrees to pay the $200 mandatory special penalty assessment ($100 per count of conviction), to the Clerk of Court for the Eastern District of Washington per count of conviction, at or before sentencing, pursuant to 18 U.S.C. § 3013.

PLEA AGREEMENT - 14

16. <u>Payments While Incarcerated</u>:

If Defendant lacks the financial resources to pay the monetary obligations imposed by the Court, Defendant agrees to earn money toward these obligations by participating in the Bureau of Prisons' Inmate Financial Responsibility Program.

17. <u>Additional Violations of Law Can Void Plea Agreement</u>:

The United States and Defendant agree that the United States may, at its option and upon written notice to the Defendant, withdraw from this Plea Agreement or modify its sentencing recommendation if, prior to the imposition of sentence, Defendant is charged with or convicted of any criminal offense or tests positive for any controlled substance.

18. <u>Waiver of Appeal and Collateral Attack Rights</u>:

In return for the concessions that the United States has made in this Plea Agreement, Defendant expressly waives all of Defendant's rights to appeal any aspect of Defendant's conviction and/or the sentence the Court imposes, on any grounds.

Defendant expressly waives Defendant's right to appeal any fine, term or condition of supervised release, or restitution order imposed by the Court.

Defendant expressly waives the right to file any post-conviction motion attacking Defendant's conviction and sentence, including a motion pursuant to 28 U.S.C. § 2255, except one based on ineffective assistance of counsel arising from information not now known by Defendant and which, in the exercise of due diligence, Defendant could not know by the time the Court imposes sentence.

Nothing in this Plea Agreement shall preclude the United States from opposing any post-conviction motion for a reduction of sentence or other attack upon the conviction or sentence, including, but not limited to, writ of habeas corpus proceedings brought pursuant to 28 U.S.C. § 2255.

PLEA AGREEMENT - 15

19. Withdrawal or Vacatur of Defendant's Plea:

Should Defendant successfully move to withdraw from this Plea Agreement or should Defendant's conviction be set aside, vacated, reversed, or dismissed under any circumstance, then:

    a.   this Plea Agreement shall become null and void;

    b.   the United States may prosecute Defendant on all available charges;

    c.   the United States may reinstate any counts that have been dismissed, have been superseded by the filing of another charging instrument, or were not charged because of this Plea Agreement; and

    d.   the United States may file any new charges that would otherwise be barred by this Plea Agreement.

The decision to pursue any or all of these options is solely in the discretion of the United States Attorney's Office.

Defendant agrees to waive any objections, motions, and/or defenses Defendant might have to the United States' decisions to seek, reinstate, or reinitiate charges if a count of conviction is withdrawn, set aside, vacated, reversed, or dismissed, including any claim that the United States has violated Double Jeopardy.

Defendant agrees not to raise any objections based on the passage of time, including but not limited to, alleged violations of any statutes of limitation or any objections based on the Speedy Trial Act or the Speedy Trial Clause of the Sixth Amendment.

20. Integration Clause:

The United States and Defendant acknowledge that this document constitutes the entire Plea Agreement between the United States and Defendant, and no other promises, agreements, or conditions exist between the United States and Defendant concerning the resolution of the case.

PLEA AGREEMENT - 16

This Plea Agreement is binding only on the United States Attorney's Office for the Eastern District of Washington, and cannot bind other federal, state, or local authorities.

The United States and Defendant agree that this Agreement cannot be modified except in a writing that is signed by the United States and Defendant.

<u>Approvals and Signatures</u>

Agreed and submitted on behalf of the United States Attorney's Office for the Eastern District of Washington.

S. Peter Serrano
United States Attorney

_____     10/28/2025
Annika Tangvald                                      Date
Special Assistant U.S. Attorney

_____     28 Oct 2025
Alison Gregoire                                      Date
Assistant U.S. Attorney

I have read this Plea Agreement and have carefully reviewed and discussed every part of the agreement with my attorney. I understand and voluntarily enter into this. Furthermore, I have consulted with my attorney about my rights, I understand those rights, and I am satisfied with the representation of my attorney in this case. My attorney has advised me that by pleading guilty to the charges relevant to this Plea Agreement, as of this date deportation appears to be a virtual certainty. No other promises or inducements have been made to me, other than those contained in this Plea Agreement, and no one has threatened or forced me in any way to enter into this Plea Agreement. I am agreeing to plead guilty because I am guilty.

_____     10-28-25
DAREN LYLE MARTIN                               Date
Defendant

PLEA AGREEMENT - 17

I have read the Plea Agreement and have discussed the contents of the Plea Agreement with Defendant. The Plea Agreement accurately and completely sets forth the entirety of the agreement between the parties. I have further advised my client by pleading guilty to the charges relevant to this Plea Agreement, as of this date deportation appears to be a virtual certainty. I concur in Defendant's decision to plead guilty as set forth in the Plea Agreement. There is no legal reason why the Court should not accept Defendant's plea of guilty.

_____ 24786

David Miller
Attorney for the Defendant

_10-28-25_
Date

PLEA AGREEMENT - 18